UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-----------------------------------------------------------------------X
TIMOTHY C. PARLATORE,
3616 Hummer Rd
Annandale, VA 22003

                Plaintiff,                      Docket No.: 22-cv-3106

      -against-                          **COMPLAINT**

ERIC S. MONTALVO,
215 Piazza
Irvine, CA 92602                      **JURY TRIAL DEMANDED**

                Defendants.
-----------------------------------------------------------------------X

Comes now Plaintiff, TIMOTHY C. PARLATORE, ESQ., *pro se*, and complains of Defendant ERIC MONTALVO, as follows:

## NATURE OF THE ACTION

1.  This case involves an extraordinarily deviant circumstance where an attorney, Defendant Montalvo, when representing a client who committed serious misconduct while on active duty in the United States Navy, chose to file a completely frivolous complaint against his adversaries' counsel, Plaintiff Parlatore, who represented several senior Naval Officers who had fallen victim to Defendant's client. Defendant Montalvo's baseless complaint was filed for the improper purpose of attempting to silence Plaintiff in his vigorous and righteous defense of his clients. Had it been filed in a different jurisdiction, it would have undoubtedly resulted in dismissal and sanctions under any one of several states' anti-SLAPP laws.

2.  During this completely improper litigation, Defendant Montalvo repeatedly violated procedural and ethical rules in pursuit of his improper goal. While those

actions will likely be the subject of separate proceedings, this action addresses Defendant Montalvo's decision, upon being confronted with irrefutable evidence of the baselessness of the claims he had raised, to instead choose to falsely, maliciously, and unlawfully defame Plaintiff through an email, which he sent to a representative of the U.S. Attorney's Office for the District of Columbia and others, falsely claiming that Plaintiff had committed perjury – a crime and an act that bears directly on Plaintiff's professional reputation and conduct of his profession.

3.  Plaintiff immediately informed Defendant of the falsity and defamatory nature of his unlawful statement and demanded a retraction.  Defendant refused, necessitating this action.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, because Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District or, alternatively, 28 U.S.C. § 1391(b)(3) as Defendant Montalvo maintains his place of business in the District of Columbia.

## PARTIES

6.  Plaintiff Timothy C. Parlatore, Esq. is a well-known attorney who founded a nationwide law firm and who frequently litigates civil and criminal cases with significant media attention.  He is a resident of Virginia.

7.  Defendant Eric Montalvo is a relatively unknown attorney who primarily represents government employees in administrative proceedings.  He maintains his offices in Washington D.C, but is a resident of California.

## STATEMENT OF FACTS

### Background of the Related Litigation

8.  Defendant represented a former junior Naval Aviator, LT Shaw, in the investigation and administrative proceedings related to his significant misconduct.  LT Shaw and his counsel, Defendant Montalvo, engaged in a pattern of improper activity to try to shift the blame for LT Shaw's misconduct to his superior officers.  These efforts included filing Inspector General complaints, reaching out to members of the media to defame LT Shaw's superior officers and finally, a completely frivolous and fallacious lawsuit against the Navy, several admirals, and Plaintiff, an attorney who represented several of LT Shaw's superior officers.

9.  Rather than pursue legitimate strategies, Defendant and LT Shaw chose to file a false complaint (the "related case"), accusing several senior Admirals and Plaintiff of a "vast racist conspiracy" to remove black officers from Naval Aviation.

10. To further promulgate this false and incompetent theory, Defendant filed an emergency motion for a preliminary injunction, brought a publicist with him to court, and contacted members of the media in an effort to ensure widest publication of these false claims, while still maintaining the veil of litigation privilege.

11. After the Navy Times did publish an article, Defendant reposted the article on his firm's website and promoted the article on social media with the hashtag #racism.

12. This publicity stunt failed, as Defendant was forced to withdraw his facially unconstitutional preliminary injunction application after publicly disgracing himself by

telling an obviously false story to the Court in the hearing.  Defendant Montalvo told the Court of an imaginary cross-examination he conducted in an earlier proceeding involving the same parties when in fact, it was an administrative proceeding, which attorneys are prohibited from participating in.  As later proven by the record of that administrative proceeding, Defendant Montalvo intentionally deceived the court, as he had conducted no such cross-examination.

13. The news article, which Defendant had hoped would hurt Plaintiff's reputation backfired causing further damage to LT Shaw's reputation within the larger aviation community.  Indeed, in the related case, the discovery produced on the subject of damages largely consisted of social media posts produced to show how LT Shaw's reputation was allegedly damaged are in response to the article that Defendant pursued, not any wrongful actions by the Defendants in that action.

14. As the related case progressed, it was marred by Defendant Montalvo's constant efforts to invade the attorney-client privilege that Plaintiff maintained with his clients. These efforts continued even after the Court rejected a motion to compel disclosure of privileged documents and a complete inventory of the attorney-client file in the form of a privilege log.

### Circumstances of LT Shaw

15. While the LT Shaw litigation contains many complicated twists and turns that are largely irrelevant to the instant complaint, one area that requires explanation is the issue of LT Shaw providing members of the media with copies of his superior officer's personal notebook.

16. While representing his clients, Plaintiff was informed by a member of the media that LT Shaw had provided them with numerous documents including surreptitiously

recorded conversations with his superiors and a copy of this superior's personal notebook, which he claimed contained date discrepancies in the multiple entries where LT Shaw was ordered to cease his illegal behavior.

17. Upon learning that LT Shaw had possession of the notebook, a copy of which had been provided to the Inspector General investigator by Plaintiff's client, Plaintiff attempted to ascertain whether, in addition to other misconduct, the investigator had been improperly providing documents to LT Shaw.

18. As part of that process, on August 23, 2019, Plaintiff reached out to a journalist who had received the documents from LT Shaw to try to compare the scanned version that his client had sent to the Inspector General investigator and the one that LT Shaw sent to the journalist.  The journalist confirmed to Plaintiff that the scans were identical, supporting the theory that the investigator had improperly provided evidence to LT Shaw.

19. On January 16, 2020, Plaintiff filed a complaint with the Department of Defense Office of the Inspector General against investigator David Ursini.  In that complaint, Plaintiff laid out why Mr. Ursini should be disciplined for his improper conduct in investigating complaints made by LT Shaw.[1]

20. In this 10-page letter, Plaintiff necessarily had to explain the background, which included a description of the serious misconduct committed by LT Shaw, which Mr. Ursini ignored.  The serious misconduct outlined in this letter included, but was not limited to:

     a.  Secretly teaching students to disregard the approved Navy method of landing on an aircraft carrier, in favor of his unapproved and potentially deadly technique;

---

[1] A copy of this letter is annexed hereto at Exhibit "A."

b. Intentionally violating regulations by repeatedly bringing an unauthorized camera into a secure space with Top Secret material present; and

c. Willfully disobeying orders to cease his unlawful activities.

21. On the 10th page, Plaintiff noted that he had "received inquiries from reporters regarding a significant amount of private information that LT Shaw has released to the media, including several surreptitiously recorded conversations with LtCol Nesbitt, as well as copies of LtCol Nesbitt's personal notes." There was then a footnote where Plaintiff explained:

> It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from Mr. Ursini.

22. It is the above footnote, where Plaintiff truthfully explains that he does not know how LT Shaw obtained copies of his superior's private notes, that forms the basis of the frivolous defamation count against Plaintiff.

### Defendant Montalvo's Defamatory Statement

23. On September 16, 2022, Plaintiff was deposed in the related litigation. During that deposition, he explained to Defendant Montalvo how the allegedly defamatory footnote did not allege that LT Shaw broke into his superior's office, but rather asked a question, which cannot be defamatory. The only affirmative assertion in the footnote is that Plaintiff was unaware of how he obtained the notes.

24. On September 23, 2022, Defendant Montalvo sent the email which forms the basis of this complaint to several people, one of whom is a representative of the U.S. Attorney's Office for the District of Columbia. In this email, Defendant Montalvo makes the false and defamatory statement that Plaintiff "lied under oath" and that Plaintiff "did

so intentionally." Defendant Montalvo then attempts to justify this completely false statement with nonsensical reasoning:

> What we know from your testimony and the record are two things: 1) you have lied under oath and 2) that you did so intentionally. Your testimony – which is false – indicates that your statement of "unknown" was that you had no idea how Shaw came into possession of the offending notes despite having the creator of the notes as a client and the person who convened the FNAEB (which took place over a year prior to your offending correspondence) that contained the offending notes. Additionally – you discussed the notes topic with Carl Prine during August of 2019 approximately five months prior to distributing your letter.[2]

25. Defendant's reasoning here does not support his false conclusion, as he is imputing all knowledge that a client may possess about a transaction unrelated to the scope of representation to the attorney. As explained in the deposition, the details of LT Shaw's  FNAEB were outside the scope of Plaintiff's representation of his clients.

26. The purpose of this email was not in furtherance of any legitimate litigation purpose, but rather was sent with actual malice. In addition to the false and defamatory statements about Plaintiff, the remainder of the email is also deeply flawed. Although the purpose of Plaintiff's email, to which Defendant was responding was to meet and confer in an effort to resolve a motion for sanctions pre-filing, in accordance with LCvR 7(m), Defendant failed to address a single factual or legal contention in the served motion, instead resorting to defamation, false insults, and failed attempts to intimidate Plaintiff:

    a. Defendant attempted to intimidate Plaintiff into not filing the motion by claiming, without elaboration, that, if it were filed, he would respond by seeking sanctions for filing a frivolous motion. Yet, in the response he

---

[2] A copy of this email is annexed hereto at Exhibit "B."

later did file, no such argument was raised,[3] as none is warranted under
the facts.

b. Defendant attempted to belittle Plaintiff for his decision not to hire
counsel to represent him in the frivolous litigation and falsely claimed that
"The Court has already admonished you on the record regarding the
truthfulness of your statements," when in fact, no such exchange occurred.

27. Approximately three hours after receiving this unlawful and defamatory email,
Plaintiff emailed Defendant Montalvo to explain the false and defamatory nature of his
statements and to demand an immediate retraction.[4]   Once again, when confronted
about his unethical or unlawful conduct, Defendant Montalvo refused to respond.

## FIRST CAUSE OF ACTION

### Defamation Per Se

28. All previous paragraphs and allegations are incorporated by reference.

29. Defendant Montalvo made a false and defamatory statement concerning the
Plaintiff, to wit that Plaintiff "lied under oath" and that Plaintiff "did so intentionally."

30. Defendant made this defamatory statement with actual knowledge of its falsity,
as he had just deposed Plaintiff days earlier, had a full and fair opportunity to cross-
examine, to ask follow-up questions, or confront Plaintiff with any evidence which might
tend to impeach his statements under oath.  Defendant did none of the above because
no such impeachment evidence exists that would possibly counter Plaintiff's completely
truthful testimony.

---

[3] In fact, Defendant's opposition papers fail to address the factual basis, including the fact that Defendant
Montalvo lied to the Court and instead relied on the novel and unsupported argument that because
Plaintiff had filed an answer to the Complaint, sanctions are inapplicable.
[4] A copy of this email is annexed hereto at Exhibit "C."

31. In the alternative and, at a minimum, Defendant acted with reckless disregard for the truth. This is a unique scenario where Defendant actually had the opportunity to question Plaintiff under oath about a statement that he later falsely claimed to constitute perjury. Any competent attorney in a similar situation would have asked follow-up questions to fully develop the record before accusing someone of perjury. Moreover, it makes no sense that a reputable attorney would commit perjury to undermine the factual basis of a non-defamatory statement on a libel-proof plaintiff in a case with zero damages. For Defendant to claim that he believes this is where an attorney is willing to risk his license and freedom is the definition of foolishness and reckless disregard for the truth.

32. Although Plaintiff concedes that he is a public figure, Defendant made this defamatory statement with actual malice, with intent to hurt Plaintiff. This statement was made as part of an effort to improperly intimidate Plaintiff into not filing a Rule 11 sanctions motion that had been properly served 21-days prior.

33. Defendant published this defamatory statement to third parties, including a representative of the U.S. Attorney's Office for the District of Columbia.

34. There was no privilege attached to the publication. Although related to a case in litigation, this statement was made privately and not in any court filings and is therefore outside the scope of the litigation privilege.

35. This defamatory statement constitutes defamation *per se*, as it alleges that Plaintiff committed criminal conduct, to wit – perjury.

36. Plaintiff seeks damages based on Defendant's wrongful conduct in an amount to be determined at a trial by jury, but in no event less than the $75,000 jurisdictional threshold of this Court.

37. In addition, because Defendant's conduct was so willful, wanton and malicious, punitive damages should be awarded in an amount to be determined by a trial by jury, but in no event less than $1,000,000.

WHEREFORE, Plaintiff demands Judgment against the Defendant as follows:

      A.  Compensatory damages;

      B.  Punitive Damages

      C.  Interest and costs of suit;

      D.  and

      E.  Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues triable.

Respectfully submitted,

Timothy C. Parlatore, Esq.
*Plaintiff, pro se*
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, New York 10007
212-679-6312
timothy.parlatore@parlatorelawgroup.com