**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TIMOTHY C. PARLATORE,

          *Plaintiff*,

     v.

ERIC S. MONTALVO,

          *Defendant*.

Civil Action No. 22-3106 (RDM)

<u>**MEMORANDUM OPINION**</u>

This is a defamation action brought by one lawyer practicing before this Court, Timothy Parlatore, against another lawyer also practicing before this Court, Eric Montalvo. The case is only the most recent chapter in a dispute that has metastasized beyond recognition. What started as a whistleblower complaint alleging racial discrimination in a U.S. Navy fighter pilot training program; grew into an investigation of Lt. Steven Shaw, the Navy officer who assisted in filing that whistleblower complaint; then evolved into an investigation of the Navy officers who had investigated Lt. Shaw to determine whether they acted for retaliatory purposes and into a second investigation of Lt. Shaw; eventually led to a lawsuit that Lt. Shaw brought challenging the Navy's actions against him, and a second lawsuit alleging that the Department of the Navy violated the Privacy Act and that the lawyer who represented the investigating officers, Timothy Parlatore, libeled Lt. Shaw; and finally led to the present dispute, which alleges that Lt. Shaw's lawyer, Eric Montalvo, defamed Parlatore in an email exchange between lawyers involved in the Privacy Act/libel litigation.

The motion now before the Court seeks to close at least one chapter in this unfortunate saga. Defendant Eric Montalvo moves to dismiss Plaintiff Timothy Parlatore's amended

1

complaint for failure to state a claim and, in the alternative, moves to strike allegedly redundant, immaterial, impertinent, or scandalous material from that complaint.  Dkt. 10; Fed. R. Civ. P. 12(b)(6), 12(f).  For the reasons explained below, the Court will **GRANT** Defendant's motion to dismiss and, accordingly, will not reach his motion to strike.

## I.  BACKGROUND

To resolve the pending motion, the Court need not recount each iteration of the dispute that led to where the parties are today.  But the Court must at least briefly recount the history of one closely related case, *Shaw v. Modly*, No. 20-cv-410 (D.D.C. filed Feb. 12, 2020) (hereinafter "*Shaw v. Modly*").[1]  As noted above, Parlatore and Montalvo represented adverse parties in the administrative proceedings involving Lt. Steven Shaw and the Navy officers who conducted the initial investigation of him.  Dkt. 9 at 2.  Acting as Lt. Shaw's counsel, Montalvo eventually filed *Shaw v. Modly* in this Court.  The current complaint in that action, the third amended complaint, asserts two causes of action: first, it alleges that the Department of the Navy violated the Privacy Act, 5 U.S.C. § 552a, by disclosing protected records to "Parlatore for the purpose of disparaging Lt. Shaw," No. 20-cv-410, Dkt. 46 at 10 (3d Am. Compl. ¶ 29), and, second, it alleges that Parlatore engaged in libel *per se* by accusing Lt. Shaw of unlawfully or improperly obtaining a notebook that belonged to his Executive Officer, Lt. Col. Nesbitt, *id.* at 13–14 (3d Am. Compl. ¶¶ 39-42).

---

[1] Over the course of the litigation, the person serving as the Secretary of the Navy changed multiple times.  Pursuant to Fed. R. Civ. P. 25(d), the Hon. Thomas Modly was replaced as a defendant by the Hon. Kenneth John Braithwaite II, who was then replaced by the Hon. Thomas Harker, who was later replaced by the Hon. Carlos Del Toro.  To avoid confusion, the Court will refer to the case as *Shaw v. Modly*, rather than *Shaw v. Del Toro*.

It is that second allegation that is most relevant to the present dispute.  In particular, the operative complaint in *Shaw v. Modly* alleges that Parlatore represented Lt. Col. Nesbitt in the administrative proceeding; that Parlatore filed a complaint with the Department of Defense's Inspector General on behalf of Lt. Col. Nesbitt and others; and that Parlatore's complaint accused Lt. Shaw of unlawfully or improperly obtaining "a copy of Lt. Col. Nesbitt's notebook," which contained evidence relating to the charges against Lt. Shaw.  No. 20-cv-410, Dkt. 46 at 13 (3d Am. Compl. ¶ 40).  The complaint in *Shaw v. Modly* further alleges: "Specifically, Mr. Parlatore asserted: 'It is unknown how Lt. Shaw came to possess a copy of Lt. Col. Nesbitt's notebook in the first place.  It appears that he either unlawfully searched Lt. Col. Nesbitt's office to make copies for himself or received copies from [the Department of Defense's Inspector General].  Either possibility is a very serious and deeply concerning issue." *Id.*  Finally, the *Shaw v. Modly* complaint alleges that Parlatore "distributed [his Inspector General] complaint to several third-party individuals, such as various Congressional staffers and Non-Governmental Agencies," thereby publishing the libelous statement.  *Id.* at 13–14 (3d Am. Compl. ¶ 41).

Parlatore chose to represent himself in *Shaw v. Modly*.   His answer to the third amended complaint denies these allegations and, in turn, claims that Lt. Shaw—or, more precisely, his counsel—is "deliberately misrepresenting the contents of [Parlatore's] letter [to the Inspector General] in an effort to manufacture a false defamation claim."  No. 20-cv-410, Dkt. 52 at 3 (Answer to 3d Am. Compl. ¶¶ 22–23).  Parlatore's answer accuses Montalvo of "knowingly making a false pleading here in violation of Fed. R. Civ. P. 11." *Id.* ¶ 23.  Over the next year, the parties engaged in discovery.  *See* No. 20-cv-410, Dkt. 55–73.

The dispute between Parlatore and Montalvo took a further turn when, on September 2, 2022, Parlatore served Montalvo with a motion for sanctions, which Parlatore indicated that he

intended to file 21 days later pursuant to the safe harbor requirements of Federal Rule of Civil Procedure 11(c).  No. 20-cv-410, Dkt. 74.  True to his word, 21 days later (and after Shaw failed to withdraw the lawsuit), Parlatore filed that motion for sanctions.  *Id.*  The motion alleged that Shaw and his counsel, Montalvo, had violated Rule 11 by filing and maintaining a frivolous lawsuit.  *Id.* at 1.  In Parlatore's words, *Shaw v. Modly* was "nothing more than a publicity stunt and frivolous abuse of the judicial system[, brought] by a disgraced former Naval Aviator and his dishonest, unethical counsel."  *Id.*  Pulling no punches, Parlatore added: "While I would not normally use such strong language to describe an opposing counsel in court documents, Mr. Montalvo did commence this case by standing in the courtroom and lying to the Court about events he claimed to have participated in, but were quickly disproven through transcripts."  *Id.* n.1.

Between September 2 (when Parlatore served a copy of the motion for sanctions on Montalvo) and September 23 (when Parlatore filed the motion) discovery in *Shaw v. Modly* continued.  Of relevance here, Montalvo deposed Parlatore on September 16, 2022, and Assistant United States Attorney Brenda Gonzalez Horowitz attended that deposition in her capacity counsel for the Department of the Navy.  Dkt. 10-1 at 16.  Three days later, on September 19, 2022, Parlatore emailed Montalvo "in an effort to meet and confer before filing [his] motion for sanctions."  Dkt. 9-2 at 3 (Am. Compl. Ex. B).  Parlatore wrote:

> I believe you had more than enough information to understand the frivolity of the claims against me before filing, and certainly before each successive amended complaint, at this point, you have even more information because, this past Friday, you conducted my deposition and had full opportunity to ask about the circumstances surrounding my request for the IG to investigate David Ursini for potentially providing documents to your client.  As there is clearly no basis to maintain your defamation claim, I would ask again you to immediately withdraw it.

*Id.* Montalvo did not immediately reply, so Parlatore sent another email on September 23, 2022, reminding Montalvo that it was the "final day of the safe-harbor period to withdraw the claims against [him] before the filing of the sanctions motion" and inquiring about a separate discovery matter. *Id.* at 2.

Later that evening, Montalvo replied to Parlatore's emails.  It is this response that forms the basis of Parlatore's defamation claim in this case.  Montalvo wrote:

> What we know from your testimony and the record are two things: 1) you have lied under oath and 2) that you did so intentionally.  Your testimony—which is false—indicates that your statement of "unknown" was that you had no idea how Shaw came into possession of the offending notes despite having the creator of the notes as a client and the person who convened the [administrative proceeding] (which took place over a year prior to your offending correspondence) that contained the offending notes.  Additionally—you discussed the notes topic with Carl Prine during August of 2019 approximately five months prior to distributing your letter.  You also acknowledge that breaking into a senior officer's office or violating a law or regulation are punishable as crimes under the Uniformed Code of Military Justice.
>
> Note that a frivolous Rule 11 sanctions motion may itself be a violation of Rule 11. Fed. R. Civ. P. 11. . . .

*Id.* at 1.  Montalvo then added:

> I understand that you are pro se.  You moved for admission to this Court.  The Court has already admonished you on the record regarding the truthfulness of your statements.  You consider this and the assistance of qualified counsel before you file any such motion.  If you file it[,] I will of course contest it and seek any and all remedies available under the law.

*Id.*

Parlatore alleges that Montalvo's assertions that he "lied under oath" and "did so intentionally" are false and defamatory.  Dkt. 9 at 8 (Am. Compl. ¶ 29).  Six individuals were copied on the email—five of whom worked at Montalvo's law firm and Assistant United States Attorney Gonzalez Horowitz.  Dkt. 10-1 at 17.  Parlatore's Amended Complaint identifies no other publication of the allegedly defamatory statements.

Montalvo now moves to dismiss Parlatore's Amended Complaint pursuant to the judicial proceedings privilege and, in the alternative, moves to strike certain material from the complaint. Dkt. 10-1.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. Dist. of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted).  For the purposes of the motion, the Court takes the allegations of fact contained in the Amended Complaint as true.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although disfavored, "an affirmative defense may be raised by pre-answer motion under Rule 12(b)," but only if "the facts that give rise to the defense are clear from the face of the complaint." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Dismissal is improper, however, when "a plaintiff's potential 'rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint.'" *de Csepel v. Republic of*

*Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013) (quoting *Goodman v. Praxair, Inc.,* 494 F.3d 458, 466 (4th Cir. 2007)) (alteration in original).

Motions to strike pursuant to Rule 12(f) are "'disfavored' by the federal courts." *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 252 (D.D.C. 2021) (quoting *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 457, 457 (D.D.C. 1994)).  As a result, courts will strike extraneous or scandalous allegations from a complaint "[o]nly if the allegations . . . are both irrelevant and prejudicial."  *Id.*

## III.  ANALYSIS

The parties devote much of their briefing to the threshold question of choice of law. When a federal court's jurisdiction is founded on diversity of citizenship, as here, the court must determine the applicable substantive law by applying the choice-of-law rules of the state in which it sits.[2]  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022). Applying this standard, Parlatore argues that under D.C.'s choice-of-law rules, Virginia law governs this dispute.  Dkt. 9 at 10 (Am. Compl. ¶ 37); Dkt. 12 at 2–3.  Montalvo disagrees, arguing that D.C. law controls.[3]  Dkt. 10-1 at 11–15.  The Court need not resolve this dispute, however, because Parlatore's Amended Complaint fails as a matter of law even under Virginia's (slightly) more plaintiff-friendly version of the judicial proceedings privilege, which Parlatore asks the Court to apply.

_____

[2] The District of Columbia is considered a state for diversity jurisdiction analyses.  28 U.S.C. § 1332(e).

[3] In addressing the "most significant relationship" element of the choice of law question, Montalvo briefly notes that "if Plaintiff was truly damaged in his profession, it would be more likely that he was injured either where his firm is principally located—New York City—or where the alleged defamation actually occurred—Washington, D.C."  Dkt. 10-1 at 14.  Neither party, however, ever argues that the Court should apply New York law, and the Court, accordingly, has no reason to determine whether the alleged injury occurred there.

Under Virginia law, "defamatory words that are actionable per se" include the following:

(1)     Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.

(2)     Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.

(3)     Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.

(4)     Those which prejudice such person in his or her profession or trade.

*Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450–51 (Va. 2006) (citing *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981)).  Parlatore characterizes himself as a public figure, acknowledging that this means "he must meet a higher standard for defamation claims."  Dkt. 12 at 8.  Parlatore must prove Montalvo acted with "actual malice."  *Jordan v. Kollman*, 612 S.E.2d 203, 207 (Va. 2005).

Montalvo "does not concede that the email put at issue by Plaintiff contains language that is defamatory."  Dkt. 10-1 at 17 n.7.  But nor does he see a need to join issue on that factual question at this early stage of the proceeding.  Instead, he argues that, even if defamatory, the statement cannot support Palatore's defamation claim because it was made in the course of—and in relation to—a judicial proceeding and, accordingly, is subject to the "judicial proceedings privilege" and is not actionable.  Dkt. 10-1 at 18–19.

Under Virginia common law, "the maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false."  *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004) (citing *Spencer v. Looney*, 82 S.E. 745, 747 (Va. 1914)).  "Absolute privilege, sometimes called judicial

privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body." *Id.* (citing *Penick v. Ratcliffe*, 140 S.E. 664, 667 (Va. 1927)).  Notably, the Virginia Supreme Court has "extended the application of the absolute privilege well beyond the actual courtroom." *Id.* (citing *Donohoe Const. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 861–62 (Va. 1988)).  A similar (and arguably more expansive) privilege applies under D.C. law.  *See Messina v. Krakower*, 439 F.3d 755, 760–62 (D.C. Cir. 2006) (explaining many ways D.C.'s judicial proceedings privilege protects statements made during litigation and in discussing potentially litigable disputes when they are related, even if not strictly relevant, to the dispute and shared only with connected persons).

"The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation.  '[T]he public interest is best served when individuals who participate in lawsuits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy.'"  *Donohoe*, 369 S.E. 2d at 860 (quoting *Watt v. McKelvie*, 248 S.E.2d 826, 829 (Va. 1978)).  In 2012, the Virginia Supreme Court endorsed the view of the judicial proceedings privilege set forth in the Restatement (Second) of Torts § 586.  *Mansfield v. Bernabei*, 727 S.E.2d 69, 75 (Va. 2012).  As the Court noted:

> The Restatement (Second) of Torts § 586 provides: "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

*Id.* at 74.  In adopting this approach, the Court joined "[n]umerous jurisdictions [that] apply an approach in accord with the Restatement, holding that absolute privilege may bar defamation claims on the basis of pre-filing, litigation-related communications."  *Id.* at 74 (collecting cases).  Also following the approach set forth in the Restatement and adopted by other courts, and

consistent with the purpose of the privilege, the Virginia Supreme Court limited the privilege to disclosures "made only to interested persons." *Id.* at 75.

Understood in this light, the privilege contains four elements. First, the allegedly defamatory statement must be made by an attorney "preliminary to," "in the institution of," or "during the course of and as part of" a judicial proceeding. *Id.* at 74 (quoting the Restatement (Second) of Torts §586). Second, the proceeding must be one in which the attorney—that is, the individual making the statement—"participates as counsel." *Id.* Third, the statement must have "some relation to the proceeding." *Id.* Finally, the statement must have been made only to "interested persons" in the proceeding. *Id.* at 75. Here, Montalvo's statements satisfy all four criteria.

The first and third criteria overlap and are best addressed together: they ask whether the allegedly defamatory statement was made "during" and "as part of" the judicial proceeding and, if so, whether the statement related to that proceeding. The answer to both questions is yes. Montalvo's allegation that Parlatore "lied under oath" and "did so intentionally" was made in an email response to the Rule 11 motion that Parlatore drafted, served on Montalvo, and ultimately filed in *Shaw v. Modly.* No. 20-cv-410, Dkt. 74. More importantly, the statement pertains directly to the allegations at issue in *Shaw*. The third amended complaint in that case alleges that Parlatore accused Lt. Shaw of wrongdoing and that Parlatore knew that his accusation was false. No. 20-cv-410, Dkt. 46 at 13 (3d Am. Compl. ¶¶ 40-41). Parlatore evidently testified at his deposition that he "had no idea how Shaw came into possession of the offending notes," even though Parlatore represented Lt. Com. Nesbitt and had discussed the notes with a reporter "five months prior to" accusing Lt. Shaw of wrongdoing. Dkt. 9-2 at 1. According to Montalvo's allegedly defamatory statement, that testimony was a lie. *Id.* For present purposes, the Court

10

need not decide who is right about this.  Rather, all that matters for now is that the statement was indisputably made "in the course" of the litigation and that it undeniably related to the case.

Parlatore's sole response to this conclusion is unconvincing.  He asserts, "[i]t is clear that Virginia's judicial privilege only applies to statements 'made in proceedings,' not extra-judicial statements made in emails."  Dkt. 12 at 4.  He, then, continues: "Although Defendant does acknowledge the Virginia standard, he makes no effort to explain how Virginia's law should be extended to out-of-court statements, and certainly not to impertinent emails."  *Id.*  Yet, if anyone, it is Parlatore who ignores the governing Virginia law.  As the Virginia Supreme Court explained in *Mansfield v. Bernabei*, the "[a]bsolute judicial privilege clearly extends outside the courtroom," and "'we have extended the application of the absolute privilege well beyond the actual courtroom.'"  727 S.E.2d at 73 (quoting *Lindeman v. Lesnick*, 604 S.E.2d 55, 58–59 (Va. 2004).  In short, Parlatore's contention that the privilege does not apply to "out-of-court statements" is squarely foreclosed under controlling Virginia law.

Nor do the cases that Parlatore invokes even remotely bear on the question presented here.  Those cases principally address the difficult question of whether statements made *in advance of litigation*, such as comments made to an investigating police officer, are preliminary to a proposed judicial proceeding.  *See*, *e.g.*, *Fields v. Sprint Corp.*, No. 16cv905, 2017 WL 4053761 at *5–6 (E.D. Va. May 11, 2017) (holding the privilege does not extend to "the earliest possible point in the potential litigation timeline," that is, comments to a police officer initiating an investigation); *see also Lokhova v. Halper*, 30 F.4th 349, 357–58 (4th Cir. 2022) (holding that a factual dispute existed regarding when the defendant "genuinely contemplate[d] the filing of a lawsuit").  Here, in contrast, the litigation was ongoing, and the statement at issue was clearly "pertinent" to that litigation.  *See In re Potomac Supply Corp.*, No. 12-30347-DOT, 2013 WL

6865405, at *6–7 (Bankr. E.D. Va. Dec. 31, 2013) (holding that the privilege covered a statement alleging "fraudulent financing proposals" in email correspondence that related to ongoing judicial proceedings). There were, in short, directly responsive to Parlatore's claim that Montalvo was subject to Rule 11 sanctions for engaging in "frivolous conduct in the filing, maintenance and litigation of" *Shaw*. No. 20-cv-410, Dkt. 74 at 1.

That leaves only two questions: whether Montalvo was acting as counsel in *Shaw v. Modly* and whether his statement was "disclosed [only] to interested persons." *Mansfield*, 727 S.E.2d at 75. Understandably, Parlatore does not seriously dispute that both of these criteria are satisfied. First, as the Court's docket reflects, Montalvo was "lead" counsel for Shaw. No. 20-cv-410. Second, as the allegedly offending email itself reflects, it was circulated only to attorneys for the parties in the *Shaw* litigation or their employees. Dkt. 10-1 at 17. Indeed, the only "third party" that Parlatore's Amended Complaint identifies as a recipient of the allegedly defamatory email is "a representative of the U.S. Attorney's Office for the District of Columbia." Dkt. 9 at 9 (Am. Compl. ¶ 33). The Department of the Navy, however, was a party to the litigation, and, as such, the U.S. Attorney's Office was certainly "interested" in the litigation.

Finally, Parlatore at least gestures at the contention that it is premature to resolve the applicability of the absolute judicial privilege on a motion to dismiss. He is, of course, correct that the privilege is an affirmative defense and that, as a result, the applicability of the defense should be resolved "'at the motion to dismiss stage only if all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" Dkt. 12 at 5 (quoting *Rodarte v. Wal-Mart Assocs.*, No. 6:12-cv-00055, 2013 U.S. Dist. LEXIS 64458 (W.D. Va. May 6, 2013)). But the problem with his argument is that, having correctly stated the law, he fails to identify any fact necessary to resolve the applicability of the defense that does not appear on the face of the

complaint—or on the face of the email exchange that is attached to, and incorporated into, the complaint. *See* Dkt. 9-2. Montalvo, in contrast, offers ample explanation for why those materials provide sufficient basis to resolve the parties' dispute. There is no reason to prolong this already prolonged and bitter dispute merely to reach the same conclusion at summary judgment.

The Court, accordingly, concludes that Montalvo has carried his burden of demonstrating that the privilege applies on the face of the Amended Complaint and that he is entitled to judgment as a matter of law.

## <u>CONCLUSION</u>

For these reasons, the Court will **GRANT** Defendant's motion to dismiss for failure to state a claim, Dkt. 10, and need not reach Defendant's motion, in the alternative, to strike certain material from the amended complaint.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 26, 2023